## UNITED STATES OF AMERICA, DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MOHAMMAD VASEEMUDDIN | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| | ) | |
| COUNTY OF COOK, | ) | |
| COOK COUNTY HEALTH AND | ) | |
| HOSPTIALS SYSTEM, | ) | |
| DANA QUARTANA, | ) | |
| UNION DOCTORS COUNCIL SEIU | ) | |
| CLAUDIA  FEGAN, M.D., | ) | |
| ENRIQUE MARTINEZ, M.D., | ) | |
| EMIL MAKAR, M.D., AND | ) | |
| CHUKWUEMEKA EZIKE , M.D., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, MOHAMMAD VASEEMUDDIN, by and through his attorneys, DuPage Attorneys LLC and for his causes of action against defendants, COOK COUNTY HEALTH AND HOSPTIALS SYSTEM, DANA QUARTANA, CLAUDIA FEGAN, M.D., ENRIQUE MARTINEZ, M.D., EMIL MAKAR, M.D., and CHUKWUEMEKA EZIKE, M.D., ("Defendants"), states:

### *PRELIMINARY STATEMENT*

1.     This action seeks declaratory, injunctive relief, equitable relief, compensatory and punitive damages, and cost and attorney's fees for racial discrimination suffered by Plaintiff in the terms and conditions of his employment up to and including his discharge by Defendant, and

damages for wrongful termination of the Plaintiff by the Defendant in violation of common law whistleblower protection.

## NATURE OF CLAIM

2.    This is an action under the First Amendment of the United States Constitution as it pertains to free speech of individuals, and State of Illinois statutory and common law protections.

## JURISDICTION

3.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(4) and 42 USC § 2000e-5(1), and a right-to-sue letter which was issued by the Equal Employment Opportunity Commission (EEOC) on January 31, 2014, a true and accurate copy of which is attached and hereto annexed as Exhibit A, based upon a charge timely filed with the EEOC on January 30, 2014, a true and accurate copy of which is attached hereto as Exhibit B. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a)and pendent claim jurisdiction over the State law claims raised herein.

4.    Declaratory, injunctive and equitable relief are sought pursuant to 28 §§ 2201, 2202 and 42 U.S.C. § 2000e-5(g). Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981(a).

5.    Cost and attorneys fees may be awarded pursuant to 42 U.S.C. § 2000c-5(k) and Fed R Civ. P 54.

## VENUE

6.    This action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 29 U.S.C. § 1391 (b), because the claim arose in this judicial district and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practice was committed in this judicial district.

2

## PARTIES

7.    At all times herein relevant, Plaintiff, was a citizen of Illinois and a resident of DuPage County, Illinois.

8.    Plaintiff is and was at all times herein relevant a male of Indian decent.

9.    Defendant, County of Cook (hereinafter "Cook County") has at all times relevant, operated one of the largest Public Health Systems in the country via the Cook County Health and Hospitals System (hereinafter the "CCHHS"). CCHHS is the second largest division of Cook County Government. CCHHS has seven affiliates, including John H. Stroger Hospital Oak Forest Hospital and Provident Hospital.

10.    Plaintiff was at all times herein relevant employed by Defendant CCHHS as a physician on or about August 3, 2001.

11.    Defendant CCHHS engages in an industry affecting commerce, and upon information and belief employs more than 500 regular employees.

12.    Defendant, Caudia Fegan, M.D., was at all times relevant an employee of Cook County, Chief Medical Officer at John H. Stroger Jr. Hospital, and Director of CCHHS.

13.    Defendant, Dana Quartana., was at all times relevant an agent and Regional Coordinator at Doctors Council SEIU.

14.    Defendant, Enrique Martinez, M.D., was at all times relevant an employee of Cook County and the Chief Medical Officer of the Department of Community Health Clinics or ACHN.

15.    Defendant, Emil Makar, M.D., was at all times relevant an employee of Cook County and the Associate Chief Medical Officer of the Department of Community Health Clinics or ACHN.

16.    Defendant, Chukwuemeka Ezike, M.D.., was at all times relevant an employee of Cook

County and the Associate Chief Medical Officer of the Department of Community Health Clinics or ACHN.

17. At all times relevant, Defendant Cook County has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. Sections 2000e(b), (g) and (h).

## FACTUAL BACKGROUND

18. At all times herein relevant, Plaintiff has adequately performed his duties as a physician and in other capacities.

19. Plaintiff worked at the Oak Forest Hospital of Cook County location of CCHHS

20. On or around August 2011 Oak Forest Hospital of Cook County was closed

21. After August 2011, Oak Forest Hospital was converted tot Oak Forest Health Center and the Emergency Room was converted to an immediate care clinic.

22. Plaintiff was employed on a full time basis by CCHHS as an emergency room physician.

23. Plaintiff frequently complained to CCHHS management about poor patient care due to cost cutting measures that left patients uncared for.

24. Plaintiff raised such issues to the Illinois Inspector General's office on September 26, 2013 and assigned case number IIG-13-0322.

25. On September 20, 2012, a patient died in an unsecured garbage closet in the immediate care center due to asphyxiation from food bolus.

26. The Patient's death was reported by plaintiff as a concerned citizen to another agency of cook county in Maywood, Illinois and was assigned case # 12192609 and investigated as " Oak Forest assist other agency death investigation." Findings were completed in May 2013.

27.    Plaintiff contacted Cook County Sheriff's Officer's a concerned citizen to report the death and lack of proper management of the immediate care center.

28.    Prior to the patients death, Plaintiff sent multiple e-mails about his concerns of patient safety to the hospital administration.

29.    On March 15 2013, Plaintiff applied and interviewed for an internal position at Provident Hospital of CCHHS as an department of internal medicine. (Internal Job Posting No.: 00114195).

30.    Plaintiff interviewed and accepted an offer to begin working at the new location.

31.    May 9, 2013 Recruitment had been asked by the Hiring Department to rescind the job offer for the Attending Physician Sr. VII position. on directions from Dr. Fegan.

32.    On May 13, 2013 while on FMLA leave and after email stating job offer was rescinded, Plaintiff called Dr. Fegan to inquire about the offer and was told he was more needed at Oak Forest and hence the offer was rescinded.

33.    Dr. Fegan, she also stated that the job offer was rescinded as she had received a bad reference letter from unknown source.

34.    As part of his contract, Plaintiff was granted an additional 30 days of leave after his FMLA leave ended. See EXHIBIT C – the employment contract.

35.    May 5, 2013, Dr. Fagan rescinded Plaintiff's job offer

36.    Plaintiff was denied guaranteed unpaid personal leave as part of unpaid FMLA in violation of his bargaining unit contract.

37.    Plaintiff was terminated after two hearings.

38.    Defendants sent Plaintiff's termination letter to an unknown address with a letter dated December 4, 2013, which still has not been sent to the Plaintiff directly.

## COUNT I

### MOHAMMAD VASEEMUDDIN, M.D.'S CLAIM AGAINST COOK COUNTY, CCHHS, CLAUDIA FEGAN, M.D., DANA QUARTANA, ENRIQUE MARTINEZ, M.D, EMIL MAKAR, M.D., AND CHUKWUEMEKA EZIKE, M.D FOR CONSPIRACY TO DEPRIVE PLAINTIFFS' OF THEIR RIGHT TO FREE SPEECH AND EQUAL PROTECTION UNDER THE LAW, PURSUANT TO 42 U.S.C. 1985

39. Plaintiff repleads paragraphs 1 through 38 of this Complaint against Defendant as if fully set forth herein.

40. The Defendants wrongfully conspired and agreed among themselves to rid themselves and Cook County of Plaintiff.

41. By virtue of the foregoing, Robert R. Simon, M.D., Aaron Hamb,M.D. and Clifford Crawford, M.D., acting under color of law, has violated Plaintiffs right to freedom of speech, as guaranteed by the First Amendment to the Constitution of the United States, thereby violating 42 U.S.C. 1985.

42. Defendants violated Plaintiff's right to free speech rights as a concerned citizen for a matter of public interest by terminating his employment for reporting the incident of patient death the Illinois Inspector General and notifying Cook County's Investigative Unit.

43. The conduct of the Defendant deprived Plaintiff of his federally protected rights of free speech.

44 As a direct and proximate result of the previously stated acts, Plaintiff has in the past and will in the future suffer adverse employment effects, loss of income and employment status, benefits and other emoluments of employment.

45. As a direct and proximate result of the previously stated acts, Plaintiff has in the past and will in the future suffer mental and emotional pain and suffering, anguish, distress, embarrassment, and humiliation.

6

46.    As a direct and proximate result of the previously stated acts, Plaintiff has in the past and will in the future be required to incur other costs.

47.    Defendant's actions were intentional, willful and wanton, and/or done with reckless disregard to the Plaintiff's federally protected rights and harm to Plaintiff.

WHEREFORE, the Plaintiff, MOHAMMAD VASEEMUDDIN, prays this Court:

1. Declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights;

2. Enjoin Defendant from engaging in such conduct;

3. Award Plaintiff lost wages, benefits, and other such relief;

4. Award Plaintiff compensatory and punitive damages that the Judge and the Jury deem sufficient to deter this Defendant and others from engaging in similar conduct;

5. Award Plaintiff's cost and attorneys fees; and

6. Grant such other relief as it may deem just and proper.

## COUNT II

## RETALIATORY DISCHARGE

48.    Plaintiff hereby realleges and incorporates Paragraphs 1-27 of this Complaint as though fully set forth herein.

49.    That upon reporting the violations of patient care to the employer, the Inspector General's office and a law enforcement body, Defendant, CCHHS and remaining defendants, terminated Plaintiff's employment.

50.    Plaintiff, up to the point of termination, was an exceptional employee.

51.    That in response to Plaintiff's intent to pursue his common law rights, he was terminated by the Defendant in violation of the common law prohibition of retaliatory discharge for

7

whistleblowing. *Jacobson v. Knepper & Moga, P.C.,* 185 Ill.2d 372, 706 N.E.2d 491, 493, 235 Ill.Dec. 936 (1998)

52. Defendants, terminated Plaintiff in violation of the public policy of maintaining a standard of care for public health care facilities.

53. That as a direct and proximate result of the Defendant's actions, Plaintiff suffered damages including, but not limited to severe emotional distress, loss of his reputation in the business community, lost of income, benefits and other financial consideration arising out of his employment with Defendant.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, including but not limited to economic loss, pain and suffering, loss of employment of life, liquidated and punitive damages in an amount sufficient to deter others and punish this defendant; and such other relief as the Court deems just, proper and equitable.

## COUNT III

## BREACH OF CONTRACT

54. Plaintiff hereby realleges and incorporates Paragraphs 1-27 of this Complaint as though fully set forth herein.

55. On or about August 5, 2013, Dr. Fagan, officer and director of CCHHS, informed PLAINTIFF that they would not honor a contractual provision allowing Plaintiff a leave of an additional 30 days after FMLA leave.

56. Plaintiff was terminated from his employment on a single day's notice in breach of the employment agreement.

57. Plaintiff's agreement with the Union allowed six months of unpaid leave.

1.   Plaintiff has fully complied with the material terms of his employment contract.

2.   The Defendants' actions constitute a material breach of plaintiff's contract of employment.

3.   As a result of the Defendants' breach of contract, plaintiff has suffered economic loss including back pay and associated benefits.

WHEREFORE, plaintiff respectfully requests that this court award plaintiff

   a.   Six months of salary, which is equivalent to approximately, $75,000.

   b.   any and all economic loss and other contractual damages to which he is entitled as a result of the defendant's breach of contract.


Respectfully Submitted,

BY: _____

One of his Attorneys

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Mohammad Vaseemuddin

M. Moeed Saeed
Atty. No.:
2001 Midwest Road, Suite 202
Oak Brook, IL 60523
Phone: (630) 447-9019
Fax: (630) 344-3696
E-Mail: msaeed@dupageattorneys.com

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2014-01798 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mohammad Vaseemuddin | (630) 424-0319 | 12-25-1975 |

Street Address        City, State and ZIP Code

**1000 E. 15th Street, Lombard, IL 60148**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| COOK COUNTY HEALTH AND HOSPITAL SYSTEM | 500 or More | (708) 687-7200 |

Street Address        City, State and ZIP Code

**Oak Forest Health Center, 15700 S Cicero Ave, Oak Forest, IL 60452**

RECEIVED

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

JAN 3 0 2014

CHICAGO DISTRICT OFFICE

Street Address        City, State and ZIP Code

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest     Latest |
| ☒ RACE   ☐ COLOR   ☒ SEX   ☒ RELIGION   ☒ NATIONAL ORIGIN | 12-04-13 |
| ☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☒ GENETIC INFORMATION | |
| ☐ OTHER *(Specify)* | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by Respondent on or around August 3, 2005. I last worked as an Attending Physician. During my employment, I complained about unsafe work practices and patient safety issues. I was subsequently denied a promotion. I was also subjected to different terms of conditions of employment, including, but not limited to, being denied child care leave. I was discharged around December 4, 2013, although I was not notified by Respondent, which caused me to be denied cobra insurance.

I believe that I was discriminated against because of my sex, male, my national origin, Indian, my race, Asian, and my religion, Islam, and retaliated against for my complaints about safety, in violation of Title VII of the Civil Rights Act of 1964, amended.

I also believe that I was discriminated against because of my genetic information, in violation of the Genetic Information Nondiscrimination Act of 2009, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Jan 30, 2014**      *M. Vaseemudd* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date      *Charging Party Signature* | |

EXHIBIT

A

EEOC Form 161 (11/09)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Mohammad Vaseemuddin<br>1000 East 15th Street<br>Lombard, IL 60148 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| 440-2014-01798 | **Kiprono Sigilai,**<br>**Investigator** | | **(312) 869-8095** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| ☐ | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| ☐ | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| ☐ | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| ☐ | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| ☒ | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| ☐ | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| ☐ | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

_____     _____     1-31-14
John P. Rowe,                                        *(Date Mailed)*
District Director

Enclosures(s)

cc:     **COOK COUNTY HEALTH AND HOSPITAL SYSTEM**
        c/o Mary R. Robinson, Esq.
        EEO/AAP Officer
        **Cook County Dept of Labor Relations**
        **Bureau of Human Resources**
        **118 North Clark, Room 840**
        **Chicago, IL 60602**


EXHIBIT
B

<u>COLLECTIVE BARGAINING AGREEMENT</u>

BETWEEN

<u>SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 20, CTW/CLC</u>

AND

COUNTY OF COOK
AMBULATORY COMMUNITY HEALTH NETWORK (ACHN)
<u>(REPRESENTING ATTENDING PHYSICIANS)</u>

Effective
August 28, 2008 through November 30, 2012



# TABLE OF CONTENTS

**Page**

ARTICLE I        RECOGNITION ................................................................. 1

    Section 1.    Representation ............................................................. 1
    Section 2.    Dues and Committee on Political Education ("COPE") Check-off ........... 1
    Section 3.    Fair Share ................................................................. 1
    Section 4.    Religion Exemption ...................................................... 2
    Section 5.    Indemnification .......................................................... 2

ARTICLE II      DECLARATION OF RIGHTS ............................................. 3

ARTICLE III     HOURS OF WORK ........................................................ 3

    Section 1.    Normal Workweek ....................................................... 3
    Section 2.    Breaks .................................................................... 4
    Section 3.    Flex-Time ................................................................ 4
    Section 4.    Schedules ................................................................ 4

ARTICLE IV     GRIEVANCE PROCEDURE .............................................. 4

    Section 1.    Definition ................................................................ 4
    Section 2.    Grievance Procedure Steps .............................................. 5
    Section 3.    Time Limits .............................................................. 5
    Section 4.    Stewards ................................................................. 5
    Section 5.    Union Representatives ................................................... 6
    Section 6.    Impartial Arbitration .................................................... 6
    Section 7.    Right to Union Representation ........................................... 6

ARTICLE V      CONTINUITY OF OPERATION ........................................... 7

    Section 1.    No Strike ................................................................. 7
    Section 2.    Union Responsibility .................................................... 7
    Section 3.    Discharge of Violators ................................................... 7
    Section 4.    No Lock-Out ............................................................. 7

ARTICLE VI     SENIORITY ............................................................... 8

    Section 1.    Probationary Period ..................................................... 8
    Section 2.    Definition of Seniority .................................................. 8
    Section 3.    Return to Former Job ................................................... 8
    Section 4.    Return to Represented Unit .............................................. 8
    Section 5.    Discipline ................................................................ 9
    Section 6.    Seniority List ............................................................ 9

i

# TABLE OF CONTENTS
### (continued)

|  |  |  |  |
|---|---|---|---|
| | Section 7. | Termination of Seniority | 9 |
| ARTICLE VII | | HOLIDAYS | 10 |
| | Section 1. | Regular Holidays | 10 |
| | Section 2. | Working On Holidays | 10 |
| | Section 3. | Floating Holiday | 10 |
| ARTICLE VIII | | VACATIONS | 11 |
| | Section 1. | Eligibility | 11 |
| | Section 2. | Maximum Accrual | 11 |
| | Section 3. | Vacation Preference and Scheduling | 11 |
| | Section 4. | Accrued Benefits at Separation | 12 |
| ARTICLE IX | | REDUCTION IN WORKFORCE, LAYOFF, AND RECALL | 12 |
| ARTICLE X | | FILLING VACANCIES | 12 |
| ARTICLE XI | | COMPENSATION | 12 |
| | Section 1. | Pay Increase | 12 |
| | Section 2. | New Classification | 13 |
| | Section 3. | Promotion, Reclassification and Demotion | 13 |
| | Section 4. | Entry Rate | 13 |
| | Section 5. | Part-Time Employees | 13 |
| | Section 6. | Extra Duty Day | 13 |
| ARTICLE XII | | WELFARE BENEFITS | 14 |
| | Section 1. | Hospitalization Insurance, Attending Physician Contributions | 14 |
| | Section 2. | Sick Pay | 15 |
| | Section 3. | Disability Benefits | 15 |
| | Section 4. | Life Insurance | 15 |
| | Section 5. | Pension Plan | 15 |
| | Section 6. | Dental Plan | 16 |
| | Section 7. | Vision Plan | 16 |
| | Section 8. | Hospitalization/New Hires | 16 |
| | Section 9. | Flexible Benefits Plan | 16 |
| | Section 10. | Insurance Claims | 16 |
| ARTICLE XIII | | LEAVES OF ABSENCE | 16 |

**TABLE OF CONTENTS**
(continued)

Page

Section 1.   Personal Leave ............................................................................. 16
Section 2.   Duty to Inform ............................................................................ 17
Section 3.   Family and Medical Leave ........................................................... 17
Section 4.   Maternity/Paternity Leave .......................................................... 17
Section 5.   Disability Leave ........................................................................... 18
Section 6.   Military Leave .............................................................................. 18
Section 7.   Seniority on Leave ....................................................................... 18
Section 8.   Retention of Benefits ................................................................... 18

ARTICLE XIV   ADDITIONAL BENEFITS .................................................... 19

Section 1.   Bereavement Pay ......................................................................... 19
Section 2.   Jury Make-Up Pay ....................................................................... 19
Section 3.   Election Day ................................................................................ 19

ARTICLE XV   COUNTY AND UNION RELATIONS ................................. 19

Section 1.   Labor Management Meetings ....................................................... 19
Section 2.   Union Representatives ................................................................. 19
Section 3.   Member Orientation ..................................................................... 20
Section 4.   Union Office ................................................................................ 20
Section 5.   Meeting Space .............................................................................. 20
Section 6.   Bulletin Boards ............................................................................ 20
Section 7.   Budget Preparation ...................................................................... 20
Section 8.   Officers and Executive Board ...................................................... 21

ARTICLE XVI   MISCELLANEOUS ............................................................. 21

Section 1.   No Discrimination ........................................................................ 21
Section 2.   Attending Physician Obligation and Professional Authority ........ 21
Section 3.   Safety ........................................................................................... 21
Section 4.   Partial Invalidity .......................................................................... 21
Section 5.   Evaluations ................................................................................... 21
Section 6.   Personnel File ............................................................................... 22
Section 7.   Physician's Statement ................................................................... 22
Section 8.   Credit Union ................................................................................. 22
Section 9.   Distribution of Work Load ........................................................... 22

**TABLE OF CONTENTS**
(continued)

Page

ARTICLE XVII    PATIENT CARE ....................................................................................... 23

      Section 1.    Establishment of Patient Care Committee ............................................. 23
      Section 2.    Recommendations of the Committee...................................................... 23

ARTICLE XVIII    CONTINUING MEDICAL EDUCATION (CME) LEAVE ................. 23

ARTICLE XIX    EDUCATION AND SEMINARS ........................................................... 24

ARTICLE XX    DURATION............................................................................................ 24

      Section 1.    Term........................................................................................................ 24
      Section 2.    Notice..................................................................................................... 24

SIDE LETTER    ................................................................................................................ 26

SIDE LETTER    ................................................................................................................ 27

iv

## COLLECTIVE BARGAINING AGREEMENT

This Collective Bargaining Agreement is made and entered into by and between Service Employees International Union, Local 20, CTW/CLC, hereinafter referred to as the "Union" and the County of Cook, hereinafter referred to as the "County".

### ARTICLE I

### RECOGNITION

**Section 1.     Representation.**

The County recognizes the Union as the sole and exclusive representative for full-time generalist attending physicians ("Doctors") employed by the County of Cook who normally spend a majority of their clinical time providing direct patient care in internal medicine, family practice, and pediatrics current in the County's Ambulatory and Community Health Network ("ACHN") clinics and such regular part-time attending physicians who normally work at least 20 hours per week at the County of Cook's ACHN clinics, and all regular full-time and regular part-time attending physicians and dentists employed by the County of Cook who normally spend a majority of their work week at Oak Forest Health Center/Hospital, but excluding: all other full-time and part-time physicians employed by the County of Cook's Bureau of Health at ACHN clinics or other facilities; the chief medical officers, clinic lead physicians, all voluntary, visiting, and contract physicians; all supervisory, managerial, and confidential employees as defined by the Act; and all elected officials of the County of Cook.

**Section 2.     Dues and Committee on Political Education ("COPE") Check-off.**

With respect to any employee in the bargaining unit from whom the County receives individual written authorization, signed by the employee, in a form agreed upon by the Union and the County, the County shall deduct from the wages of the employee the dues and initiation fee required as a condition of membership and shall forward such amount to the Union within thirty (30) calendar days after close of the pay period for which the deductions are made. The amounts deducted shall be set by the Union, and the County may retain a service charge of five cents ($.05) for making such deductions. The County shall provide a voluntary payroll deduction to the Union's COPE upon receipt of a written authorization from employees. Such deduction shall be remitted in a separate check on a monthly basis to the Union or COPE, as specified in writing by the Union.

**Section 3.     Fair Share.**

1.      The County shall grant "Fair Share" to the Union in accordance with Sections 6(e)-(g) of the Illinois Labor Relations Act upon satisfactory demonstration to the County that the Union has more than 50% of the eligible employees in the bargaining unit signed up as dues paying members. Once this condition has been met, within thirty (30) days of the Union meeting said conditions or within thirty (30) days of their employment by the County all employees covered by this Agreement will either (1) become members of the Union and pay the Union regular Union dues and fees or (2) pay to the Union each month their fair share of the Union's costs of the collective bargaining process, contract

administration and pursuing matters affecting employee wages, hours, and other conditions of employment.

2.   Such fair share payment by non-members shall be deducted by the County from the earnings of the non-member employees and remitted to the Union, provided, however, that the Union shall certify to the County the amount constituting said fair share, not exceeding the dues uniformly required of members of the Union, and shall certify that said amount constitutes the non-members' proportionate share of the Union's costs of the collective bargaining process, contract administration and pursuing matters affecting employee wages, hours and other conditions of employment.

3.   Upon receipt of such certification, the County shall cooperate with the Union to ascertain the names and addresses of all employee non-members of the Union from which earnings the fair share payments shall be deducted and their work locations.

4.   Upon the Union's receipt of notice of an objection by a non-member to the fair share amount, the Union shall deposit in an escrow account, separate from all other Union funds, 50% of all fees being collected from non-union employees. The Union shall furnish objectors and the County with verifications of the terms of the escrow arrangement and, upon request, the status of the fund as reported by the bank.

     The escrow fund will be established and maintained by a reputable independent bank or trust company and the agreement therefore shall provide: that the escrow accounts be interest earning at the highest possible rate; that the escrowed funds be outside of the Union's control until the final disposition of the objection; and that the escrow fund will terminate and the fund therein be distributed by the terms of an ultimate award, determination, or judgment including any appeals or by the terms of a mutually agreeable settlement between the Union and an objector or group of objectors.

5.   If an ultimate decision in any proceeding under state or federal law directs that the amount of the fair share should be different than the amount fixed by the Union, the Union shall promptly adopt said determination and notify the County to change deductions from the earnings of non-members to said prescribed amount.

**Section 4.** **Religion Exemption.**

Employees who are members of a church or religious body having a bona fide religious tenet or teaching which prohibits the payment of a fair share contribution to a union shall be required to pay an amount equal to their fair share of union dues, as Described in Section 4, to a non-religious charitable organization mutually agreed upon by the Union and the affected employees as set forth in Section 6(g) of the Illinois Labor Relations Act.

**Section 5.** **Indemnification.**

The Union shall indemnify and hold the County harmless against any and all claims, demands, suits, or other forms of liability that may arise out of or by reason of any action taken by the county for the purpose of complying with any provision of this Agreement. If an incorrect deduction is made, the Union shall refund any such amount directly to the involved employee.

2

## ARTICLE II

## DECLARATION OF RIGHTS

**County Authority and Rights.**

The Union recognizes that the County has the full authority and responsibility for directing its operation and determining policy. The County reserves unto itself all powers, rights, authority, duties and responsibilities conferred upon it and vested in it by State and Federal statutes and Constitutions, and to adopt and apply all reasonable rules, regulations and policies as it may deem necessary to carry out its statutory and constitutional responsibilities. The County's rights shall be limited only by the specific and express terms of this Agreement. The County's rights include, but are not limited to:

A. The exclusive right to determine its policies, standards of services and to operate and manage its affairs and to direct its work force in accordance with its responsibilities. The County has all the customary and usual rights, power and functions of management.

B. The exclusive right to hire, transfer, and promote; and the exclusive right to discipline, suspend or discharge employees for just cause.

C. The right to establish reasonable work rules, make work assignments, determine schedules of work, methods, processes and procedures by which work is to be performed, place, methods, means and number of personnel needed to carry out the County's responsibilities and duties; as well as the right to determine reasonable productivity, performance and evaluation standards.

D. The right to change existing or introduce new methods, equipment or facilities and the right to contract for goods and services.

E. The right to make, publish, enforce reasonable rules and regulations, and to revise same; and, the County has the right to reclassify existing positions based on assigned duties and responsibilities or make changes in assigned duties and responsibilities.

F. The right to establish standards governing the standard of care to be rendered to patients.

## ARTICLE III

## HOURS OF WORK

**Section 1.** **Normal Workweek.**

The normal workweek will consist of up to fifty (50) hours per week, but as professionals in the health care industry, Attending Physicians will work such hours as are necessary to fulfill

3

their patient care responsibilities, as well as being on-call as needed, by rotation within their department.

When an Attending Physician is on-call, the Attending is expected to be able to report within one hour of being called. Discipline for failing to do so will not be automatic, but will be based on all of the facts, including how late the Attending Physician is, the reason for the delay, and whether a pattern exists, and shall be subject to the disciplinary and grievance procedures.

**Section 2.**     **Breaks.**

The work day normally will include a thirty (30) minute meal period and necessary breaks which Attending Physicians may take at their discretion, consistent with their professional judgment and responsibility provided that there will not be a disruption in patient care.

**Section 3.**     **Flex-Time.**

Flex time schedules may be granted by County, if there are legitimate and compelling personal reasons for the request and the flex time is consistent with the operational needs of the Clinic. Such requests for flex time shall not be unreasonably denied. Requests for flex time must be submitted by the employee at least two (2) weeks in advance. Flex time privileges may be cancelled or suspended by the County for legitimate operational reasons or due to misuse by the employee.

**Section 4.**     **Schedules.**

Attending Physician schedules shall be posted for the upcoming month at least two weeks in advance of the beginning of the month, including the schedule for moonlighting, rounds, and holidays. Once posted, schedules shall not be changed unless two (2) weeks' notice is provided to the affected physician, except when the change is necessitated by the immediate need to provide patient care of when Physicians voluntarily exchange days or agree to cover other hours in which case the agreement to the schedule change shall be placed in writing by the affected Physicians and a copy provided to the Department/ Division Chair and leadership at ACHN clinical area.

## ARTICLE IV

## GRIEVANCE PROCEDURE

**Section 1.**     **Definition.**

A grievance is a difference between the Union and the County regarding the interpretation or application of provisions of this Agreement, but does not include decisions or actions regarding credentialing, appointment, reappointment or other discipline or other decisions or actions issued or made pursuant to the processes set forth in the Medical Staff Bylaws. The Union will send copies of grievances appealed to or submitted at Steps Three or Four to the hospital COO/Designee.

4

**Section 2.**     **Grievance Procedure Steps.**

The steps and times as provided in the County's Grievance Procedure are as follows:

| Step | Submission Time Limit This Step (Calendar Days) | Submitted | Time Limit Meeting | Response |
|------|---------------------------------------------------|-----------|---------------------|----------|
| 1 | 30 days from the date the Grievant knew or should have known of the event(s) giving rise to the grievance | Immediate Supervisor | 5 days | 5 days |
| 2 | 5 days | Hospital/CMO or Designee | 5 days | 10 days |
| 3 | 10 days | Chief, Bureau of Human Resources/Hearing Officer | 30 days (Status report to Union if exceeded) | 30 days (Status report to Union if exceeded) |
| 4 | 30 days | Impartial Third Party | | 30 days |

When a grievance relates to all or a substantial number of employees, or the Union's own interests, the grievance may be initiated by the Union at Step 2.

All grievances and associated responses must be submitted to Administrative Staff Services for date and time stamp, and log in procedures. The grievance and subsequent responses shall be distributed to the appropriate parties by Administrative Staff Services.

**Section 3.**     **Time Limits.**

Time limits may be extended by mutual agreement in writing between the employee and/or the Union and the County. Neither the Union nor the County shall waive the established time limits unless by written, mutual agreement.

**Section 4.**     **Stewards.**

The Union will advise the County in writing of the names of the stewards and shall notify the County promptly of any changes. Stewards will be permitted to handle and process grievances during their work hours provided that patient care will not be adversely affected. One steward will be released pursuant to this Section to handle any particular grievance. If there is a desire to train stewards or a grievance is of an unusual nature, the Union may request the release of one additional steward, and the Union's request will not be unreasonably denied.

Up to two stewards shall be allowed to attend authorized meetings with Union representatives during normal hours without loss of pay, provided that at least 14 days' advance notice of such meetings is given and that patient care will not be adversely impacted. Such meetings shall be limited to a maximum of four per year per steward.

5

**Section 5.**     **Union Representatives**.

Duly authorized representatives of the Union will be permitted at reasonable times to enter the facilities for purposes of handling grievances or addressing other contract administration issues with physicians or Hospital representatives. These representatives will be identified to the Hospital COO/Designee in a manner suitable to the County, and on each occasion will first secure the approval of the Hospital COO/Designee and CMO to enter the Hospital and conduct their business so as not to interfere with the operation of the facility. The Union will not abuse this privilege, and such right of entry shall at all times be subject to general Hospital rules that are applicable to non-employees.

**Section 6.**     **Impartial Arbitration**.

If the Union is not satisfied with the Step 3 answer, within thirty (30) days after receipt of the Step 3 answer, it may submit in writing to the County notice that the Union is submitting the grievance to impartial arbitration. The Union and County will make arrangements with the arbitrator to hear and decide the grievance without unreasonable delay.

Expenses for the arbitrator's services and the expenses which are common to both parties to the arbitration shall be borne equally by the County and the Union. Each party to an arbitration proceeding shall be responsible for compensating its own representatives and witnesses.

The arbitrator shall not amend, modify, nullify, ignore or add to the provisions of this Agreement. The issue or issues to be decided will be limited to those presented to the arbitrator in writing by the County and the Union. The arbitrator's decision must be based solely upon his interpretation of the meaning of this Agreement or application of the express relevant language of the Agreement. The decision of the arbitrator shall be final.

The arbitrator shall be selected on a rotating basis from the permanent panel agreed to by the parties regarding all of their mutual bargaining units. Either party shall have the authority to strike an arbitrator from the permanent panel at any time. The struck arbitrator will proceed on cases currently assigned, but will not receive any new case assignments. In the event that an arbitrator is struck from the panel, the parties shall meet as soon as possible to choose a mutually agreed upon replacement. Nothing herein shall prevent the parties, by mutual agreement, from selecting an arbitrator from outside the panel. Absent such mutual agreement, the arbitrator shall be selected from the panel in accordance with the above procedure.

**Section 7.**     **Right to Union Representation**.

An employee shall be entitled to the presence of a Union representative at an investigatory interview if he/she requests one and if the employee has reasonable grounds to believe that the information obtained in the interview may be used to support disciplinary action against him/her.

6

## ARTICLE V

## CONTINUITY OF OPERATION

**Section 1.**    **No Strike.**

The Union will not cause, and will not sanction in any way, any work stoppage, strike, picketing or slowdown of any kind or for any reason, or the honoring of any picket line or other curtailment, restriction or interference with any of the County's functions or operations; and no Doctor will cause or participate in any such activities during the term of this Agreement or any extension thereof.

**Section 2.**    **Union Responsibility.**

Should any activity proscribed in Section 1 of this Article occur, which the Union has not sanctioned, the Union shall immediately:

A.    Publicly disavow such action by the Doctors or other persons involved;

B.    Advise the County in writing that such action has not been caused or sanctioned by the Union;

C.    Notify the Doctors stating that it disapproved of such action and instructing all Doctors to cease such action and return to work immediately; and

D.    Take such other steps as are reasonably appropriate to bring about observance of the provisions of this Article, including compliance with reasonable requests of the County to accomplish this end.

**Section 3.**    **Discharge of Violators.**

The County shall have the right to discharge or otherwise discipline any or all Doctors who violate any of the provisions of this Article. In such event, the Doctor or Doctors, or the Union on their behalf, shall have no recourse to the grievance procedure, except for the sole purpose of determining whether a Doctor or Doctors participated in the action prohibited by this Article. If it is determined that a Doctor did so participate, the disciplinary action taken by the County may not be disturbed.

**Section 4.**    **No Lock-Out.**

The County agrees that it will not lock out its Doctors during the term of this Agreement or any extension thereof.

7

## ARTICLE VI

## SENIORITY

**Section 1.      Probationary Period.**

A Doctor's probationary period shall be six (6) months from his/her most recent date of hire at ACHN or at Oak Forest Health Center/Hospital. The Hospital may extend this probationary period for up to an additional six (6) months by written notice to the Doctor and to the Union. The Hospital shall meet with the Doctor to provide the reason for the extension, and the Doctor shall have the right to have a Union steward or representative present for that meeting. During the probationary period, a Doctor shall have no seniority, may be discharged for any lawful reason, and shall have no recall rights or recourse to the grievance procedure regarding any layoff, discipline or discharge. Upon completion of the probationary period, a Doctor's seniority shall be computed as the most recent date of hire. Any Doctor who has completed his or her probationary period as provided for in this section, and who then is transferred out of the bargaining unit to another position within Cook County Health and Hospitals System Board ("System") shall not serve an additional probationary period if he or she later transfers back into the unit.

If a Doctor who has completed his/her probationary period at another System attending physician bargaining unit is involuntarily transferred by the System to this Hospital, said Doctor will not have to go through the above probationary period. This exception shall not apply to a Doctor who joined this Hospital's staff as a result of applying for a vacant position that has arisen.

**Section 2.      Definition of Seniority.**

Seniority is an employee's length of most recent continuous employment as an Attending Physician at the Bureau of Health since his/her last hiring date, with pro-rata adjustments based on hours worked for part-time employees.

**Section 3.      Return to Former Job.**

An employee who has been promoted, transferred or recalled to another job within the represented unit or in accordance with the provisions of this Article, may be returned by County to the former job within a reasonable period, but not to exceed thirty (30) calendar days, without loss of seniority, if the employee does not demonstrate the ability to satisfactorily perform the job to which he/she was promoted, transferred, or recalled. An employee who has accepted another position within the Cook County Bureau of Health, whether or not within the bargaining unit, in accordance with the provisions of this Article, may ask to return to the former job within thirty (30) calendar days after commencing work in the new position without loss of seniority.

**Section 4.      Return to Represented Unit.**

An employee who has been promoted or transferred out of the bargaining unit to another position within the Cook County Bureau of Health, and who is later transferred back to the unit,

8

shall upon return to the unit be granted the seniority he/she would have had the employee continued to work in the bargaining unit.

### Section 5.    Discipline.

Doctors may only be disciplined for just cause and are entitled to Union representation in any disciplinary proceeding. A pre-disciplinary meeting for suspensions and discharges shall be held and the County shall make reasonable effort to accommodate the Union when scheduling such meetings. The County shall notify the Union and the employees of its intent to conduct a pre-disciplinary meeting, the reason for the meeting and the nature of the charge(s). During the pre-disciplinary meeting, the employee and/or the Union representative shall be given an opportunity to respond to the applicable charge(s). If the employee and/or the Union representative do not appear at the meeting, the County may proceed with the discipline, which shall be subject to the grievance procedure. Any verbal or written discipline less severe than a suspension shall not be used as the basis for the next step in progressive discipline if more than a year passes without the employee receiving additional discipline.

### Section 6.    Seniority List.

In January and July of each year, the County shall provide to the Union the following report in writing or electronically, as requested by the Union: a report of all bargaining unit employees which contains the following information in alphabetical order by Department: The employee's name, home address, current classification (job title), pay grade, step, salary, job code, employment status (active or on leave), location, date of hire. This report shall be provided no later than the 15th of January and July of each year.

### Section 7.    Termination of Seniority.

An employee's seniority and employment relationship with the County shall terminate upon occurrence of any of the following:

A. Resignation or retirement;

B. Discharge for just cause;

C. Loss of clinical privileges at the Hospital or loss of appointment or reappointment to the Hospital Medical Staff pursuant to the procedures set forth in the Medical Staff Bylaws (not subject to the grievance and arbitration procedure);

D. Absence for three consecutive work days without the employee notifying either his/her immediate supervisor or the Medical Director, unless the employee has an explanation that is satisfactory to the County which shall not act arbitrarily in applying this paragraph;

E. Failure to report to work upon the termination of a leave of absence or vacation unless the employee has an explanation that is satisfactory to the County which shall not act arbitrarily in applying this paragraph;

9

F.  Absence from work because of layoff for twelve (12) months or for disability or approved leave of absence for twelve (12) months in the case of all non-probationary employees;

G.  Failure to notify the County within nine (9) calendar days of the employee's intent to report to work upon recall from layoff, or failure to report for work within fourteen (14) calendar days after notice to report for work is sent by certified mail to the employee's last address on file with County; or

H.  Engaging in gainful employment while on an authorized leave of absence, unless written permission to engage in such employment was granted in advance by the County.

## ARTICLE VII

## HOLIDAYS

### Section 1.  Regular Holidays.

All full-time Attending Physicians shall receive eight (8) hours pay at their regular hourly rate for the holidays listed below. These holidays are not to be counted as part of an employee's vacation time. (Part-time Physicians regularly working at least twenty (20) hours per week shall receive holiday pay on a pro rata basis.)

|  |  |
|---|---|
| New Year's Day | Columbus Day |
| Martin Luther King's Birthday | Labor Day |
| Lincoln's Birthday | Veteran's Day |
| Memorial Day | Thanksgiving Day |
| Independence Day (Fourth of July) | Christmas Day |
| President's Day | |

### Section 2.  Working On Holidays.

Attending Physicians who work on any of the holidays identified in Section 1 of Article VI shall receive a day off (with eight (8) hours of pay at their regular hourly rate) before the end of the fiscal year in which the Attending Physician worked the holiday.

### Section 3.  Floating Holiday.

In addition to the paid holidays in Section 1, Attending Physicians also shall accrue one (1) floating holiday on December 1 of each year. The Attending Physician may request to use the floating holiday at any time and requests shall not be unreasonably denied. Any floating holiday that an Attending Physician has not used during the fiscal year shall be lost and not carried over. An Attending Physician required to work on a previously scheduled floating holiday shall receive another day off as described in Section 2.

10

## ARTICLE VIII

## VACATIONS

<u>Section 1.</u>    <u>Eligibility</u>.

Vacation credit shall be earned for each month during which the employee is in an active pay status for eighty (80) hours. The amount of annual paid vacation is based upon the following schedule:

| Service | Vacation | Maximum Accrual |
|---------|----------|-----------------|
| 1 Year | 15 Days/120 hours | 30 Days/240 hours |
| 5 Years | 20 Days/160 hours | 40 Days/320 hours |
| 10 Years | 25 Days/200 hours | 50 Days/400 hours |

Attending Physicians may use only such vacation leave as has been earned and accrued.

<u>Section 2.</u>    <u>Maximum Accrual</u>.

Attending Physicians may accumulate up to the maximum accrual amounts set forth in Section 1 based upon the attending physician's years of service.

<u>Section 3.</u>    <u>Vacation Preference and Scheduling</u>.

In order to ensure the orderly operation of the Hospital and in the interests of patient care, the County reserves the right to limit the number of Attending Physicians within a department or team who will be permitted to be on vacation at any one time. The County, through the Department Chair in consultation with the Medical Director, further reserves the right to limit the number of consecutive vacation days, if it determines that patient care will be adversely affected by the Attending Physician's continued absence despite any alternative coverage which has been arranged. The County will consider the Attending Physician's personal circumstances when considering vacation requests. Physicians are to request routine vacation or conference time off at least 60 days in advance.

If more Attending Physicians wish to be off at one time than may be allowed, the Attending Physicians within the department or team first will be given an opportunity to resolve the issue. If they cannot do so, the Department Chair shall consult with the Attending Physicians within the department or team to attempt to obtain a resolution. If they cannot resolve the matter, the Department Chair shall decide the issue based upon seniority and the fair distribution of prime vacation times among the Attending Physicians. Emergency vacation requests will be granted if the County determines that patient care will not be adversely affected.

The County agrees that its determinations under the above two paragraphs will not be arbitrary or capricious.

11

**Section 4.** **Accrued Benefits at Separation.**

Upon termination of employment, the Attending Physician shall be paid for all accrued but unused vacation days through the last day worked and for any compensating day that the employee has not taken for having worked a holiday that occurred before the termination of the employee's employment.

## ARTICLE IX

## REDUCTION IN WORKFORCE, LAYOFF, AND RECALL

Should the County find it necessary to decrease the number of Doctors working within a specialty, the County shall give written notice to the Union at least three (3) weeks prior to the effective date of the layoff of the Doctors. During that interim period, the County will be willing to meet with the Union to discuss any alternatives to the layoff of any Doctor(s) but shall have no duty to bargain regarding its decision to lay off Doctors nor the impact of that decision on the bargaining unit or members of the bargaining unit. In determining the identity of Doctors who shall be laid off or recalled, the County shall base its decision on the Doctors' education, training, experience, skill, qualifications, credentials, productivity, and seniority. When all of these factors are equal the least senior Doctor shall be laid off. Non-probationary employees who are laid off shall be subject to recall for twelve months. No vacancy should be filled by an external hire if there is a Doctor with recall rights who is qualified to fill that position. Doctors may refuse recall to a specialty other than that from which they were laid off.

## ARTICLE X

## FILLING VACANCIES

Vacant positions shall be posted on bulletin boards in the administrative or clinical areas of the department or divisions, for a period of fourteen (14) days until the County's electronic system is fully operational, at which time the County shall post vacant positions electronically for fourteen (14) days as well as transmit them electronically to the Union. In determining who should fill a vacancy, the County shall consider the Doctor's education, training, experience, knowledge, skill, ability, qualifications, credentials, productivity, and seniority. The County agrees to interview all qualified applicants from the bargaining unit and to provide a written response to an applicant within 30 days after the application process closes.

## ARTICLE XI

## COMPENSATION

**Section 1.** **Pay Increase.**

The salary grades and steps applicable to the bargaining unit shall be increased as follows during the terms of this Agreement:

a. Effective with the first full pay period on or after January 1, 2011: 2.25%

12

b.     Effective with the first full pay period on or after June 1, 2012:     3.75%

**Section 2.     New Classification.**

If the County establishes new classifications, it will notify the Union and offer the Union an opportunity to discuss the new classification and pay rate. After the County has provided this opportunity, it may assign a pay rate. If the Union believes that the rate is unreasonable, it may grieve the reasonableness of the rate.

**Section 3.     Promotion, Reclassification and Demotion.**

**Promotions** — Attending Physicians promoted to a higher labor grade will proceed to the lowest step of the new grade that provides them with a pay rate increase.

**Reclassifications** — An Attending Physician whose position is reclassified to a higher labor grade shall be placed on the step that is closest to, but at least as high as, the Attending Physician's current pay rate. An Attending Physician whose position is reclassified to a lower labor grade shall not receive a pay rate cut, but will be placed in the step that is closest to the Attending Physician's pay rate prior to the reclassification. If the Attending Physician's pay rate is above the top step of the new labor grade, the Attending Physician shall not receive pay increases until the top step of the new labor grade exceeds that pay rate.

**Demotions** — An Attending Physician who is demoted to a lower labor grade shall be placed in the same step in the lower grade.

In Promotions, Reclassifications and Demotions, the anniversary date for future step movement shall be the effective date of the Promotion, Reclassification or Demotion.

**Section 4.     Entry Rate.**

A newly hired Attending Physician shall be paid at least at the minimum of the Grade K4 rate.

**Section 5.     Part-Time Employees.**

Part-time employees who are regularly employed for twenty (20) or more hours per week shall be entitled to vacations, sick pay, holidays, hospitalization insurance, life insurance, jury pay, and bereavement pay on a pro rata basis.

The extent to which part-time employees are entitled to disability and pension benefits is governed by the provisions of the Cook County Employees Pension Plan.

**Section 6.     Extra Duty Day.**

When doctors work extra hours because they are approved to perform work outside of their normal responsibilities, they shall be paid hourly rates as follows:

13

| ASC | $75 |
| Oak Forest Immediate Care | $75 |

All other applicable extra duty rates will remain the same.

## ARTICLE XII

### WELFARE BENEFITS

**Section 1.**   **Hospitalization Insurance, Attending Physician Contributions.**

A.   The County agrees to maintain certain health benefits as summarized in Appendix A.

B.   Attending Physicians who enroll in the County's HMO health benefits plan shall contribute through payroll deduction as follows for their hospitalization insurance:

| Attending Physician only | 0.5% of salary |
| Attending Physician + children | 0.75% of salary |
| Attending Physician + spouse | 1.0% of salary |
| Family | 1.25% of salary |

C.   Attending Physicians who enroll in the County's PPO health benefits plan shall contribute through payroll deduction, as follows for their hospitalization insurance:

| Attending Physician only | 1.5% of salary |
| Attending Physician + children | 1.75% of salary |
| Attending Physician + spouse | 2.0% of salary |
| Family | 2.25% of salary |

D.   The HMO and PPO plan designs will be revised, respectively, as follows:

Prescription drug co-pays for the HMO and PPO plans will be $7.00 for generic, $15.00 for formulary, $25.00 for non-formulary, and the mail order co-pay for a 90-day supply shall be double the amounts listed above.

### HMO

| Office Visit Co-Pay | $10 |
| ER Co-Pay | $40 |
| In-Patient Hospital Stay | $100 |
| Out-Patient Hospital Procedures | $100 |

### PPO

| Individual Deductible | $125/$250 |
| Family Deductible | $250/$500 |

14

| | |
|---|---|
| Individual Out-of-Pocket Maximum | $1,500/$3,000 |
| Family Out-of-Pocket Maximum | $3,000/$6,000 |
| ER Co-Pay | $40 |
| Office Visit Co-Pay | $25/Deductible and Co-Insurance |

**Section 2.**    **Sick Pay.**

Attending Physicians shall accumulate sick pay credits at the rate of 3.69 hours per pay period in which the Attending Physician is in pay status for at least 40 hours. Sick leave may be accumulated to a maximum of one hundred fifty (150) days. Up to the accumulated sick leave credits, an Attending Physician prevented from working because of the Attending Physician's illness or injury (other than occupational illness or injury) or because of an illness in the Attending Physician's immediate family as defined in Article X, Section 2, shall be entitled to receive sick pay at his or her regular salary for each day of absence. All Attending Physicians employed on a part-time basis of at least forty (40) hours per pay period shall be granted sick leave with pay proportionate to the time worked per pay period.

**Section 3.**    **Disability Benefits.**

Attending Physicians incurring any occupational illness or injury will be covered by Worker's Compensation insurance benefits. Duty disability and ordinary disability benefits also will be paid to Attending Physicians who are participants in the County Employee Pension Plan in accordance with that Plan. Duty Disability benefits are paid to the Attending Physician by the Retirement Board when the Attending Physician is disabled while performing his/her work duties. Benefits amount to seventy-five percent (75%) of the Attending Physician's salary at the time of injury, and begin the day after the date his/her salary stops; such benefits to be reduced by any Worker's Compensation paid the County. Ordinary disability occurs when an Attending Physician becomes disabled due to any cause, other than injury on the job. An eligible Attending Physician who has applied for such disability compensation will be entitled to receive, on the thirty-first (31st) day following disability, fifty percent (50%) of salary, less an amount equal to the sum deducted for all annuity purposes. If an Attending Physician receives accrued salary beyond the 31st day, disability payment will not begin until the 1st day the Attending Physician is in no pay status after the 30 days have expired. The first thirty (30) consecutive days of ordinary disability are compensated for only by the use of any accumulated sick pay and/or vacation pay credits unless the Attending Physician and the County otherwise agree. The Attending Physician will not be required to use sick time and/or vacation time for any day of duty disability. All provisions of this section are subject to change to the extent required by State law.

**Section 4.**    **Life Insurance.**

All Attending Physicians shall be provided with life insurance in an amount equal to the Attending Physician's annual salary (rounded to the next $1,000), at no cost to the Attending Physician, with the option to purchase additional insurance up to maximum of the Attending Physician's annual salary. No life insurance shall be offered through the County's HMO plans.

15

**Section 5.    Pension Plan.**

The County Employees and Officers Annuity and Benefit Fund will be continued in effect for the duration of this Agreement and all Attending Physicians of the County are required to become members of that Fund. The Fund will continue to provide Attending Physicians with annual statements of their interest therein.

**Section 6.    Dental Plan.**

All Attending Physicians shall be eligible to participate, at no cost to them, in the dental plan as set forth in Appendix B. No dental coverage shall be offered through the County's HMO plans.

**Section 7.    Vision Plan.**

All Attending Physicians shall be eligible to participate, at no cost to them, in the vision plan as set forth in Appendix C. No vision coverage shall be offered through the County's HMO plans.

**Section 8.    Hospitalization/New Hires.**

All new Attending Physicians covered by this Agreement shall be required to enroll in the County HMO plan of their choosing, such enrollment to be effective from the date of hire through the expiration of the first full health plan year following such date of hire.

**Section 9.    Flexible Benefits Plan.**

All Attending Physicians shall be eligible to participate, at no cost to them, in a flexible benefits plan to be established by the County. Such plan shall include segregated IRS accounts for child care and medical expenses.

**Section 10.    Insurance Claims.**

A dispute between an Attending Physician (or his/her covered dependent) and the processor of claims regarding the appropriateness of a claim or coverage shall not be subject to the grievance procedure provided for in this Agreement. Attending Physicians shall continue to be afforded an opportunity to present appeals of such insurance disputes in person, provided it is not an Attending Physician who is on duty if the proceeding occurs outside of an ACHW clinic.

## ARTICLE XIII

## LEAVES OF ABSENCE

**Section 1.    Personal Leave.**

An Attending Physician may be granted a leave of absence without pay by the Department Chair, with the written approval of the Hospital's Chief Operating Officer. Such leave shall be intended to take care of emergency situations and shall be limited to one (1) month

16

for every full year or continuous employment by the County and/or any of the Cook County Health Facilities, not to exceed one (1) year, except for military service. An employee granted a leave to absence shall be eligible, when such leave expires, to receive the salary and the same or comparable position at the time the leave was granted.

**Section 2.     Duty to Inform.**

Attending Physicians must inform their Department of their intention to go to leave in accordance with the notice provisions contained herein. Before their departure, they must provide the Department with a current address and telephone number and maintain current contact information while on leave. In addition, the Department may require Attending Physicians to report in on a reasonable periodic basis. Attending Physicians who wish to extend a leave must apply to their Department at least two (2) weeks before they are scheduled to return, unless medical circumstances preclude such notice. Attending Physicians on a leave of at least thirty (30) days must contact their Department at least two (2) weeks before returning from leave and complete all processing, including medical examinations, before they can return.

**Section 3.     Family and Medical Leave.**

An Attending Physician is entitled to a leave of absence under Family and Medical Leave if s/he has been employed at least twelve (12) months by the County and has worked at least 1,250 hours during the previous twelve (12) month period. Under Family and Medical Leave, eligible Attending Physicians are entitled to take up to a total of twelve (12) weeks of leave in a rolling twelve (12) month time period for:

A.     The birth of a child;

B.     Placement of a child with the Attending Physician for adoption or foster care;

C.     The care of an Attending Physician's spouse, son, daughter, or parent, who has a serious health condition; and

D.     A serious health condition that makes an Attending Physician unable to perform the functions of his/her position.

While an Attending Physician is on Family and Medical Leave, the County shall continue to pay its share of the employee's health insurance premium, and the employee is responsible for paying his/her applicable contribution. All terms in this section are used in accordance with the County's Family and Medical Leave Act ("FMLA") policy. Attending Physicians must first use accrued sick leave as part of their Family and Medical Leave unless the leave is due to the birth or adoption of a child. To the extent that the employee is using vacation or sick leave, the Family and Medical Leave is paid; otherwise, it is not.

**Section 4.     Maternity/Paternity Leave.**

Attending Physicians shall be granted unpaid maternity or paternity leaves of absence to cover periods of pregnancy and post-partum child care. Attending Physicians need not exhaust all accrued vacation or six time before going on maternity/paternity leave, but may apply such

17

accrued time to the leave. The length of such leave, in general, shall not exceed six (6) months, but may be renewed by the Department Chair. Upon returning from such leave, the reinstatement rights of the employee will be identical to those of an employee returning from an ordinary disability leave. Leave granted under this section counts toward an employee's twelve (12) weeks of Family Medical Leave.

**Section 5.**     **Disability Leave**.

An Attending Physician who is receiving County disability benefits shall be granted a leave of absence without pay for the duration of the period for which disability benefits are received. During the first year while on such a leave, an employee will not be replaced. If at any time while the employee is eligible for the disability leave, the employee becomes able to perform their job, they will be granted the same or comparable position, at the same salary, to the extent that one is available for which they are qualified.

**Section 6.**     **Military Leave**.

Employees who enter the armed services of the United States, either voluntarily or by reason of conscription, shall be granted a leave of absence without pay and shall be entitled to be restored to the position they held prior to going on leave with the same anniversary and seniority dates. The employee must present a copy of military orders when requesting a leave, and must file a written request for reinstatement to a former position within sixty (60) days after termination of military service, along with a copy of military discharge papers.

An employee, who has at least six (6) months or more of continuous actual service and is a member of the Illinois National Guard or any of the Reserve Components of the Armed Forces of the United States, shall be entitled to a leave of absence with full pay for limited service in field training, cruises, and kindred recurring obligations. Such leave will normally be limited to eleven (11) working days in each year.

**Section 7.**     **Seniority on Leave**.

An employee on an approved unpaid leave of absence shall retain seniority accrued prior to the leave, but shall not accrue seniority, pension, vacation or other benefit service credit during such period (except as may be otherwise provided in the County's pension plan). Nor shall such period count toward an employee's entitlement to automatic progression in wage scale based on length of service. Employees who return from leave shall have their pay rates adjusted by any general increases that occurred while they were on leave.

**Section 8.**     **Retention of Benefits**.

An employee on any unpaid leave of absence other than FMLA will be required to pay the cost of the insurance benefits in order to keep these benefits in full force and effect during the period of leave. Arrangements for payments of such costs must be made with the Hospital's Payroll Office prior to departure on the leave. If the Physician fails to make such arrangements, the County may cancel insurance benefits, which will be reinstated upon the employee's return to work, subject to such waiting period and other rules and regulations as may be applicable to the insurance plan.

18

## ARTICLE XIV

## ADDITIONAL BENEFITS

**Section 1.**     **Bereavement Pay.**

In the event of death in the immediate family, an Attending Physician will be granted up to three (3) paid, excused days off. For purposes of this section, an employee's immediate family includes parents, spouse, children (including stepchildren and foster children), siblings and domestic partners. The three (3) days of bereavement leave shall not include the employee's unpaid scheduled days off. Any additional time needed for bereavement for these relationships, or for bereavement regarding spouse's parents, grandparents, grandchildren, or other members of the Attending Physician's household may be taken as emergency vacation.

**Section 2.**     **Jury Make-Up Pay.**

Attending Physicians shall be granted leave with pay for any jury duty, including required reporting for jury when summoned, whether or not the employee is used as a juror. The Attending Physician shall turn over to the County any compensation which is received for responding to the jury summons or serving on the jury.

**Section 3.**     **Election Day.**

If the work schedule of an Attending Physician who is a registered voter would prevent him/her from voting, he or she will be granted up to two hours off so that he or she may vote.

## ARTICLE XV

## COUNTY AND UNION RELATIONS

**Section 1.**     **Labor Management Meetings.**

For the purpose of conferring on matters of mutual interest, the Union and the County agree to meet at least once each quarter, but more frequently if mutually agreed. Within five (5) days of either party making a request to meet, the parties shall schedule a mutually convenient time and location for the Labor Management Meeting. At least five (5) days prior to the scheduled meeting, the Union and the County shall each notify the other of the items that it wishes to have placed on the agenda. The Union and the County shall each designate not more than three (3) representatives to a labor-management committee for this purpose, although the representatives designated by either party may be alternated or rotated if desired.

**Section 2.**     **Union Representatives.**

Duly authorized representatives of the Union will be permitted at reasonable times to enter the facilities for purposes of handling grievances or addressing other contract administration issues with physicians or Hospital representatives. These union representatives will be identified to the Hospital's Director/Designee in a manner suitable to the County, and on each occasion will first secure the approval of the Hospital's Director/Designee to enter the

19

Hospital and conduct their business so as not to interfere with the operation of the facility. The Union will not abuse this privilege, and such right of entry shall at all times be subject to general Hospital rules that are applicable to non-employees.

### Section 3.    Member Orientation.

Within fourteen (14) days of the date on which the New Attending Physician begins employment, the County shall notify the Steward designated by the Union of the name and department of the newly-hired Physician so that the Steward may meet with the newly-hired Physician at the discretion of the Steward and Physician consistent with their judgment and responsibility so as not to disrupt care to patients.

### Section 4.    Union Office.

The Hospital shall continue to provide the Union with an office within the facility which may be utilized by the Attending Physicians as well as other bargaining units at Provident, and Ambulatory and Community Health Network (ACHN) which are represented by the Union.

### Section 5.    Meeting Space.

Upon at least ten (10) days advance notice, the Hospital will provide the Union with space for a membership meeting each quarter. The Hospital will make every reasonable effort to accommodate requests for more frequent membership meetings, provided there is available space.

The Hospital will provide the Union with space for a Stewards' Meeting each month upon at least five (5) days notice, and will make every reasonable attempt to provide the space with less notice.

Nothing in this section requires the Hospital to provide release time for Attending Physicians to attend membership or Stewards meetings.

### Section 6.    Bulletin Boards.

The County will make two (2) bulletin boards available for use by the Union at the Hospital. Upon approval by Hospital Administration, which shall not be unreasonably delayed or withheld, the Union shall be permitted to post notices on these bulletin boards regarding Union meetings and Union business. There shall be no other postings by the Union or its members of materials other than as herein provided. No Attending Physicians shall make any distributions so as to interfere with the performance of his/her duties.

### Section 7.    Budget Preparation.

Each Department Chair shall provide notice to Attending Physicians in his/her Department of any deadline for budget submissions and shall consider timely input from Attending Physicians in the Department in preparing his/her budget recommendations for each fiscal year. Attending Physicians may submit written input, and the Department Chair will meet with Attending Physicians upon request provided that the request is made sufficiently in advance

CHICAGO/#2245623.2

of the date that the recommendations are due. The lead physician will provide all Attending Physicians in the department with a copy of the budget recommendation upon request.

**Section 8.**     **Officers and Executive Board**.

One Attending Physician, if elected to a position as a Union officer or elected to a position on the Executive Board or Executive Council of the Local, up to once a month shall be permitted to attend meetings of the Executive Board and/or Council without loss of pay, provided that patient care will not be adversely affected. These meetings shall not occur more than once a month or last more than one day, and the Union shall provide fourteen (14) days notice of the meeting.

## ARTICLE XVI

## MISCELLANEOUS

**Section 1.**     **No Discrimination**.

No employee shall be discriminated against by the County or the Union on the basis of race, color, sex, age, religion, disability, national origin, ancestry, sexual orientation, marital status, military discharge status, political affiliation and/or belief, or activity or non-activity on behalf of the Union.

**Section 2.**     **Attending Physician Obligation and Professional Authority**.

Attending Physicians shall comply with assignments made by the County, but after doing so may utilize the grievance procedure if the Attending Physician has a dispute regarding the assignment; however the Attending Physician shall not be required to comply with an assignment if it would create an imminent threat of death or serious bodily injury to the employee or the patient.

**Section 3.**     **Safety**.

The County will continue to make reasonable provisions for the safety of its employees during their hours of employment. An Attending Physician from the represented unit, as designated by the Union, shall serve on and be expected to attend the Environment of Care Committee. The parties understand that in certain instances an additional Attending Physician designated by the Union may need to attend committee meetings. On these occasions, the Union will give prior notification.

**Section 4.**     **Partial Invalidity**.

If any provision of this Agreement is or becomes invalid or unenforceable by reason of any Federal or State law or local ordinance now existing or hereinafter enacted, such invalidity or unenforceability shall not affect the remainder of the provisions hereof.

21

**Section 5.**     **Evaluations.**

Attending Physicians shall be provided with a copy of any evaluation pertaining to them that is prepared as part of the credentialing/-re-credentialing process under the Medical Staff Bylaws. At the Attending Physician's request, the Department Chair shall meet with the Attending Physician to discuss the evaluation. The Attending Physician may have a Union representative or another Attending Physician present during the meeting, if the Department Chair consents. If the County implements any evaluation process other than that which currently exists, the County will notify the Union and, at the Union's request, shall meet with the Union to discuss the process prior to implementation.

**Section 6.**     **Personnel File.**

Upon written request to the Director of Human Resources or designee, an employee may inspect his/her personnel file at a time mutually acceptable to the Hospital or clinic and the employee. Discipline, counselings, complaints, evaluations, memoranda or correspondence regarding performance or other work-related issues that are maintained in a peer review, department chair, medical director, or credentials file also shall be made available to the employee, upon request, at a mutually agreeable time. None of these documents shall be maintained in a file other than those listed above.

Each employee shall receive a copy of any formal performance evaluation, written warning, documentation of a verbal warning, or any other materials of a disciplinary and/or adverse nature initiated by the employer, before such material is placed in his/her personnel, peer review, department chair, medical director or credentials file. The employee shall sign and date such material only as proof of receipt and not as agreement with content. The employee shall have the right to respond in writing within ten (10) working days from the date such material was presented to the employee and to have such response placed in the file.

**Section 7.**     **Physician's Statement.**

An employee who has been off duty for five (5) consecutive days or more for any health reason will be required to provide a physician's statement as proof of illness, and may be required to undergo examination by the County's physician before returning to work.

For health-related absences of less than five (5) consecutive days, a physician's statement or proof of illness will not be required except when the County has a reasonable basis to suspect that the individual did not have a valid health reason for the absence. If indicated by the nature of a health-related absence, examination by the County's physician may be required to make sure that the employee is physically fit for return to work.

**Section 8.**     **Credit Union.**

The County will deduct from the wages of employees duly authorized deductions for the Union's Credit Union, and shall forward such amounts to the Credit Union. To the extent practicable, the County also will permit use of its premises by the Credit Union.

22

<u>Section 9.</u>      <u>Distribution of Work Load.</u>

The County agrees that, while patient acuity, patient care and operational needs are paramount in making work assignment, workloads should be distributed equitably among the physicians in the same specialty or department when practical.

**ARTICLE XVII**

**PATIENT CARE**

<u>Section 1.</u>      <u>Establishment of Patient Care Committee.</u>

The Union shall establish a Patient Care Committee for purposes of evaluating staffing needs, positions and assignments, training and education and generally the improvement of care provided to patients of the Hospital. The Patient Care Committee shall consist of eight (8) members, seven of which shall be Attending Physicians selected by the Union and one (1) member shall be a Union representative or officer, who shall serve in an ex officio capacity.

The Union may, at its discretion, allow the participation of a representative selected by management, if so requested by management, either as a voting or ex officio member. Within sixty (60) days of the appointment of the members of the Patient Care Committee, they shall convene to adopt a statement of purpose, duties and procedures consistent with this Article.

<u>Section 2.</u>      <u>Recommendations of the Committee.</u>

The Patient Care Committee may make recommendations to the Hospital for improvement of patient care, which recommendations shall be submitted in writing to the Chair of the relevant departments, the Medical Executive Committee, the Medical Director and Chief Operating Officer of the Hospital.

Within ninety (90) days of the Committee's submission of recommendations, the Chair of the relevant department, the Medical Executive Committee, the Medical Director and/or the Chief Operating Officer shall either implement the recommendations, offer to meet and confer with the Committee concerning the recommendations or provide the Patient Care Committee with an explanation as to why the recommendations are not implemented. The parties agree that non-acceptances and non-implementation of Committee recommendations by the Hospital shall not be grievable.

**ARTICLE XVIII**

**CONTINUING MEDICAL EDUCATION (CME) LEAVE**

Attending physicians shall receive up to ten (10) days of paid CME leave to take pre-approved professional medical education conferences or programs provided that they are job related and attendance does not impair patient care.

23

## ARTICLE XIX

### EDUCATION AND SEMINARS

The County agrees to allocate funds for education purposes in each year of this Agreement to be made available to all Local 20 bargaining unit employees. The amount allocated shall be an aggregate total of twenty thousand dollars ($20,000) for all Local 20 bargaining units. Attending physician bargaining unit employee requests for such funds shall be for reimbursement for the costs of courses that qualify for Category 1 credit under the State of Illinois Division of Professional Regulation criteria as identified in the Fact Sheet attached as Exhibit A and as updated from time to time in the future. Employees who wish to apply for such reimbursement shall submit their request through the Union to the Cook County Director of Human Resources. An employee may request funds up to an amount no greater than four hundred dollars ($400) in a fiscal year. Approval for reimbursement shall be offered on an equitable basis.

## ARTICLE XX

### DURATION

**Section 1.      Term.**

This Agreement shall become effective in the first full pay period following Union ratification and approval by the Cook County Board of Commissioners, and shall remain in effect through November 30, 2012. It shall automatically renew itself from year to year thereafter unless either party shall give written notice to the other party not less than ninety (90) days prior to the expiration date, or any anniversary thereof, that it desires to modify or terminate this Agreement.

If such written notice is given by either party, this Agreement shall continue to remain in effect after the expiration date, until a new Agreement has been reached or either party shall give the other party five (5) consecutive days written notice of cancellation thereafter.

**Section 2.      Notice.**

Any notice under this Agreement shall be given by registered or certified mail; if by the Union, then one such notice shall be addressed to the President, Board of Cook County Commissioners, Room 500, with a copy to the County's Chief, Bureau of Human Resources, Room 840, and both addressed to 118 North Clark Street, Chicago, Illinois; or if by the County, such notice shall be addressed to the Union's President at 309 West Washington Street, Suite 250, Chicago, Illinois. Either party may, by like written notice, change the address to which notice to it shall be given.

24

Signed and entered into this _____ day of _____, _____.

COUNTY OF COOK:

By: _____
    TONI PRECKWINKLE, President
    Cook County Board of Commissioners

Attest:

_____
DAVID D. ORR
Cook County Clerk

UNION: Service Employees International
Union, Local 20, CTW/CLC

By: _____
    EMILIE N. JUNGE,
    Regional Coordinator Doctors Council
    SEIU

25

# APPENDIX A

## Local 20 — Ambulatory Physicians

| JOB CODE | GRADE | TITLE |
|---|---|---|
| 1634<br>1650 | K4 | Attending Physician IV<br>Attending Physician Senior IV |
| 1635<br>1651 | K5 | Attending Physician V<br>Attending Physician Senior V |
| 1636<br>1652 | K6 | Attending Physician VI<br>Attending Physician Senior VI |
| 1637<br>1653 | K7 | Attending Physician VII<br>Attending Physician Senior VII |
| 1638<br>1654 | K8 | Attending Physician VIII<br>Attending Physician Senior VIII |

Appendix A-1

Effective June 1, 2008

## SCHEDULE VI

### BUREAU OF HUMAN RESOURCES
### MEDICAL PRACTITIONER COMPENSATION PLAN

| GRADE | | 1ST STEP | 2ND STEP | 3RD STEP | 4TH STEP | 5TH STEP |
|---|---|---|---|---|---|---|
| K0 | Hourly | 30.870 | 32.374 | 33.874 | 35.528 | 37.193 |
| | Bi-Weekly | 2,469.60 | 2,589.92 | 2,709.92 | 2,842.24 | 2,975.44 |
| | Annual | 64,209 | 67,337 | 70,457 | 73,898 | 77,361 |
| K1 | Hourly | 36.214 | 37.995 | 39.790 | 41.714 | 43.647 |
| | Bi-Weekly | 2,897.12 | 3,039.60 | 3,183.20 | 3,337.12 | 3,491.76 |
| | Annual | 75,325 | 79,029 | 82,763 | 86,765 | 90,785 |
| K2 | Hourly | 42.972 | 45.109 | 47.167 | 49.464 | 51.790 |
| | Bi-Weekly | 3,437.76 | 3,608.72 | 3,773.36 | 3,957.12 | 4,143.20 |
| | Annual | 89,381 | 93,826 | 98,107 | 102,885 | 107,723 |
| K3 | Hourly | 53.438 | 56.062 | 58.634 | 61.446 | 64.314 |
| | Bi-Weekly | 4,275.04 | 4,484.96 | 4,690.72 | 4,915.68 | 5,145.12 |
| | Annual | 111,151 | 116,608 | 121,958 | 127,807 | 133,773 |
| K4 | Hourly | 59.218 | 62.085 | 64.939 | 68.103 | 71.239 |
| | Bi-Weekly | 4,737.44 | 4,966.80 | 5,195.12 | 5,448.24 | 5,699.12 |
| | Annual | 123,173 | 129,136 | 135,073 | 141,654 | 148,177 |
| K5 | Hourly | 64.939 | 68.103 | 71.239 | 74.700 | 78.174 |
| | Bi-Weekly | 5,195.12 | 5,448.24 | 5,699.12 | 5,976.00 | 6,253.92 |
| | Annual | 135,073 | 141,654 | 148,177 | 155,376 | 162,601 |
| K6 | Hourly | 70.675 | 74.121 | 77.565 | 81.333 | 85.134 |
| | Bi-Weekly | 5,654.00 | 5,929.68 | 6,205.20 | 6,506.64 | 6,810.72 |
| | Annual | 147,004 | 154,171 | 161,335 | 169,172 | 177,078 |
| K7 | Hourly | 76.412 | 80.150 | 83.847 | 87.947 | 92.057 |
| | Bi-Weekly | 6,112.96 | 6,412.00 | 6,707.76 | 7,035.76 | 7,364.56 |
| | Annual | 158,936 | 166,712 | 174,401 | 182,929 | 191,478 |
| K8 | Hourly | 79.747 | 83.640 | 87.566 | 91.841 | 96.106 |
| | Bi-Weekly | 6,379.76 | 6,691.20 | 7,005.28 | 7,347.28 | 7,688.48 |
| | Annual | 165,873 | 173,971 | 182,137 | 191,029 | 199,900 |
| K9 | Hourly | 87.872 | 92.169 | 96.469 | 101.195 | 105.940 |
| | Bi-Weekly | 7,029.76 | 7,373.52 | 7,717.52 | 8,095.60 | 8,475.20 |
| | Annual | 182,773 | 191,711 | 200,655 | 210,485 | 220,355 |
| K10 | Hourly | 93.623 | 98.190 | 102.767 | 107.821 | 112.888 |
| | Bi-Weekly | 7,489.84 | 7,855.20 | 8,221.36 | 8,625.68 | 9,031.04 |
| | Annual | 194,735 | 204,235 | 213,755 | 224,267 | 234,807 |
| K11 | Hourly | 102.205 | 107.232 | 112.225 | 117.764 | 123.287 |
| | Bi-Weekly | 8,176.40 | 8,578.56 | 8,978.00 | 9,421.12 | 9,862.96 |
| | Annual | 212,586 | 223,042 | 233,428 | 244,949 | 256,436 |

CHICAGO/#2245623.2

# COOK COUNTY HEALTH PLAN DESIGN/APPENDIX C

## PLAN DESIGN CHANGES EFFECTIVE 12/1/07
## PAYROLL CONTRIBUTION CHANGES EFFECTIVE 6/1/08

| BENEFIT OVERVIEW | HMO | | PPO | |
|---|---|---|---|---|
| PLAN LIMITS AND MAXIMUMS: | Current Benefits (through 11/30/07) | Benefit Level Effective 12/1/07 | Current Benefits (through 11/30/07) In Network / Out of Network | Benefit Level Effective 12/1/07 In Network / Out of Network |
| Individual Deductible* | None | | $0 / $200 | $125 / $250 |
| Family Deductible* | None | | $0 / $400 | $250 / $500 |
| Ind. Out of Pocket Max* | None | | $1,000 **/ $3,000 ** | $1,500 ** / $3,000 ** |
| Fam. Out of Pocket Max* | None | | $2,000 **/ $6,000 ** | $3,000 ** / $6,000 ** |
| Lifetime Maximum | Unlimited | | Unlimited / $1,000,000 | Unlimited / $1,000,000 |
| *Annual Basis | | | **Excludes co-payments, annual deductibles, and charges in excess of Schedule of Maximum Allowances--SMA) | **Excludes co-payments, annual deductibles, and charges in excess of Schedule of Maximum Allowances--SMA) |

| PLAN LIMITS AND MAXIMUMS: | HMO Current Benefits (through 11/30/07) | HMO Benefit Level Effective 12/1/07 | Current Benefits (through 11/30/07) In Network / Out of Network | Benefit Level Effective 12/1/07 In Network / Out of Network |
|---|---|---|---|---|
| Co-Insurance | | None | | 90% / 60% *** |
| | | | | *** Subject to Schedule of Maximum Allowances (SMA), i.e., the amount doctors and other health care providers in the network have agree to accept for their services. These amounts are generally lower than what providers outside the network charge. If you go out of network, you will pay any balance above the SMA in addition to the deductible and co-insurance. |

CHICAGO/#2245623.2

Appendix C-2

## OUTPATIENT SERVICES (MEDICAL & SURGICAL)

| BENEFIT OVERVIEW | HMO | | PPO | |
|---|---|---|---|---|
| | Current Benefits through 11/30/07 | Benefit Level Effective 12/1/07 | Current Benefits (through 11/30/07) In Network / Out of Network | Benefit Level Effective 12/1/07 In Network / Out of Network |
| Doctor Office Visits | $3 co-pay/member/visit | $10 co-pay/member/visit | 90% after $20 co-pay / 60% * | 90% after $25 co-pay / 60% * |
| Routine Physical Exams and Preventive Screenings | $3 co-pay/member/visit | $10 co-pay/member/visit | 90% after $20 co-pay / 60% * | 90% after $25 co-pay / 60% * |
| Well-Child Care | $3 co-pay/member/visit | $10 co-pay/member/visit | 90% after $20 co-pay / 60% * | 90% after $25 co-pay / 60% * |
| X-Ray/Diagnostic tests (performed in lab or hospital) | 100% | 100% | 90% / 60% * | 90% / 60% * |
| Maternity Prenatal/Postnatal Care | $3 co-payment / member for initial visit | $10 co-payment / member for initial visit | 90% after $20 co-pay (initial visit) / 60% * | 90% after $25 co-pay (initial visit) / 60% * |
| OutPatient Surgery (facility charges) | 100% | 100% after $100 co-pay | 90% / 60% * | 90% / 60% * |
| OutPatient Surgery (doctor services) | 100% | 100% | 90% / 60% * | 90% / 60% * |
| Other OutPatient Services (including chemotherapy, radiation, renal dialysis) | 100% | 100% | 90% / 60% * | 90% / 60% * |
| Allergy Testing / Injections / Immunizations | $3 co-pay/member/visit | $10 co-pay/member/visit | 90% after $20 co-pay / 60% * | 90% after $25 co-pay / 60% * |
| Infertility Treatment, as defined by plans | $3 co-pay/member/visit | $10 co-pay/member/visit | 90% after $20 co-pay / 60% * | 90% after $25 co-pay/ 60% * |

Appendix C-3

**OUTPATIENT SERVICES (MEDICAL & SURGICAL, cont'd)**

| BENEFIT OVERVIEW | HMO | | PPO | |
|---|---|---|---|---|
| | Current Benefits through 11/30/07 | Benefit Level Effective 12/1/07 | Current Benefits (through 11/30/07) In Network / Out of Network | Benefit Level Effective 12/1/07 In Network/ Out of Network |
| Physical, Speech and Occupational Therapy (60 visits Combined Annual Maximum) | 100% | 100% | 90% / 60* | 90% / 60%* |
| Ambulance Services | 100% | 100% | 80% / 80% * | 80% / 80% * |
| Emergency Room Visits (life threatening illness or injury; waived if admitted as inpatient) | 100% | 100% after $40 co-pay | 100% | 100% after $40 co-pay |
| Medically Necessary Dental Services (repair from accidental injury to sound natural teeth) | 100% | 100% | 90% / 60% * | 90% / 60% * |
| Home Health Care | 100% | 100% | 90% / 60% * | 90% / 60% * |
| Skilled Nursing Care (excl. custodial care) | 100% | 100% | 90% / 60% * | 90% / 60% * |
| Prosthetic Devices | 100% | 100% | 90% / 60% * | 90% / 60% * |
| Hospital (Semi-Private Room), including Maternity inpatient obstetrical care | 100% | 100% after $100 co-pay per admission | 90% / 60% * | 90% / 60% * |
| Physician/Surgeon/Anesthesiologist Services | 100% | 100% | 90% / 60% * | 90% / 60% * |
| X-Ray / Diagnostic Services | 100% | 100% | 90% / 60% * | 90% / 60% * |
| Facility Charges | 100% | 100% | 90% / 60% * | 90% / 60% * |

| BENEFIT OVERVIEW | HMO | | PPO | |
|---|---|---|---|---|
| | Current Benefits through 11/30/07 | Benefit Level Effective 12/1/07 | Current Benefits (through 11/30/07) In Network / Out of Network | Benefit Level Effective 12/1/07 In Network / Out of Network |
| Mental Health/Chemical Dependency/Substance Abuse Combined Maximum Benefit for In/Out Mental Health and Chemical Dependency Abuse Limits | Unlimited | Unlimited | Individual Annual Maximum: $5,000 Outpatient and $25,000 Combined In and Outpatient per individual, per calendar year, and a $100,000 lifetime maximum (benefit maximum do not apply to mental health benefits) | |
| Outpatient Services (unlimited) | $3 co-pay per visit | $10 co-pay per visit | 70% / 50% * Subject to overall plan limits stated above. | 70% / 50% * Subject to overall plan limits stated above. |
| Inpatient Mental Health/Substance Abuse (30 days/year max) | 100% | 100% | 90% / 60% * Subject to overall plan limits stated above | |
| Supplemental Outpatient Mental Health/Substance Abuse: 2/lifetime; 4 hrs/night; 4 night/wk; 4 consecutive weeks | $3 co-pay per visit | $10 co-pay per visit | 70% / 50% * Subject to overall plan limits stated above | |

CHICAGO/#2245623.2

CHICAGO/#2456233.2

Appendix C-6

**PRESCRIPTION DRUGS (WHEN FILLED AT A PARTICIPATING PHARMACY)**
**ADMINISTERED BY PHARMACY BENEFIT MANAGER, NOT HEALTH PLAN(S)**

| BENEFIT OVERVIEW | HMO | | PPO | |
| --- | --- | --- | --- | --- |
| | Current Benefits through 11/30/07 | Benefit Level Effective 12/1/07 | Current Benefits Through 11/30/07 | Benefit Level Effective 12/1/07 |
| Generic (30 day supply at Retail) | $5 | $7 | $5 | $7 |
| Brand (30 day supply at Retail) | $10 | N/A | $10 | N/A |
| Formulary (30 day supply at Retail) | N/A | $15 * | N/A | $15 * |
| Non-Formulary (30 day supply at Retail) | N/A | $25 * | N/A | $25 * |
| Mail Order Co-Pays (90 day supply) | 1 x Retail Co-pay | 2 x Retail Co-pay | $0 | 2 x Retail Co-pay |

\* If you purchase a formulary or non-formulary drug when a generic equivalent is available, you will pay the generic co-pay plus the difference in cost between the generic and the formulary/non-formulary drug.

Employee Contributions
Effective June 1, 2008

| Percentage of Salary (Pre-Tax) | HMO | | PPO | |
|---|---|---|---|---|
| | Contribution Through 5/31/08 | Contribution Effective 6/1/08 | Contribution Through 5/31/08 | Contribution Effective 6/1/08 |
| Employee Only | .5% | .5% | 1.5% | 1.5% |
| Employee plus Child(ren) | N/A | .75% | N/A | 1.75% |
| Employee plus Spouse | .5% | 1.0% | 1.5% | 2.0% |
| Employee plus Family | .5% | 1.25% | 1.5% | 2.25% |
| Cap | $8 PER PAY PERIOD | None | | None |

Appendix C-7

## VISION BASIC BENEFITS – APPENDIX C

Eligible employees and their covered dependents may receive a routine eye examination and lenses once every calendar year, frames once every 24 months. Once the basic benefits are exhausted, additional glasses and contacts are available to participants at discounted prices through participating provider locations.

**Eye Examination: $0**

Benefit includes a routine complete examination, refraction and prescription. Also, if indicated, your doctor may recommend additional procedures (such as dilation) at an additional cost to the member.

**Eyeglass Lenses: $0**

Benefit includes standard uncoated plastic lenses regardless of size or power. Lens options are available for additional costs. Solid tints are covered in full.

**Frames **: $0**

Members may choose a frame up to a regular retail value of $100. Frames above $100 regular retail price, member pays the amount over $100 less 10%.

**Contact Lenses **: $0**

Benefit includes any pair of contact lenses up to a regular retail of $100. Contacts above $100 regular retail are available at an additional cost.

** The applicable allowance amount may be used only once per benefit period on either eyeglasses or contacts.

CHICAGO/#2456633.2

## LENS OPTIONS CO-PAYMENTS

| | |
|---|---|
| Standard Progressive (No-Line Bifocal) | $50 |
| Polycarbonate | $30 |
| Scratch Resistant Coating | $12 |
| Ultraviolet Coating | $12 |
| Solid or Gradient Tint | $ 8 |
| Glass (Only for non-minors) | $15 |
| Photochromatic | $30 |
| Anti-Reflective Coating | $35 |

Appendix C-9

## DENTAL HMO BENEFITS - APPENDIX C

All new employees hired after December 1, 1999, must be in the Dental HMO for one for year before changing to the Dental PPO. Employees are allowed to change plans during the annual open enrollment after one year of HMO enrollment.

Dental care is provided to eligible members and their dependent through participating designated dentist. The premium for the dental care is paid in full by Cook County.

SCHEDULE OF BENEFITS:

PREVENTIVE CARE: Includes dental exams, x-rays and two cleanings per year are covered at 100%. Fluoride treatments for children under age 19 are also covered at 100%.

BASIC BENEFITS: Require a co-payment by the member for each specific service. These co-payments equal a discount of approximately 75%.

MAJOR SERVICES: Require a co-payment by the member for each specific service. These co-payments equal a discount of approximately 60%.

ORTHODONTICS: Available to children under the age of 19 with co-payments equal to a discount of approximately 25%.

DEDUCTIBLE: None

BENEFIT PERIOD MAXIMUM: Unlimited

CHICAGO/#2245623.2

## DENTAL PPO BENEFITS - APPENDIX C

| Benefit Period Maximum | In-Network | Out-Of-Network * |
|---|---|---|
| Deductible | $25/Individual; $100 Family | $50/Individual; $200 Family |
| | (4 individual maximum, does not apply to preventive and orthodontic services) | (4 individual maximum, does not apply to preventive and orthodontic services) |
| Preventive (No Deductible) | 100% of Maximum Allowance | 80% of Maximum Allowance * |
| Primary Services (x-rays, space maintainers) | 80% of Maximum Allowance | 60% of Maximum Allowance * |
| Restorative Services: | | |
| Routine Fillings | 80% of Maximum Allowance | 60% of Maximum Allowance * |
| Crowns | 50% of Maximum Allowance | 50% of Maximum Allowance * |
| Inlays and Onlays | 50% of Maximum Allowance | 50% of Maximum Allowance * |
| Emergency Services (Palliative Emergency Treatment) | 80% of Maximum Allowance | 80% of Maximum Allowance * |
| Endodontics | 80% of Maximum Allowance | 60% of Maximum Allowance * |
| Periodontics | 80% of Maximum Allowance | 60% of Maximum Allowance * |
| Oral Surgery | 80% of Maximum Allowance | 60% of Maximum Allowance * |
| Routine Extractions | 80% of Maximum Allowance | 60% of Maximum Allowance * |
| Removal of Impacted Teeth (soft tissue and partial bony) | | |
| Prosthetics | 50% of Maximum Allowance | 50% of Maximum Allowance * |
| Orthodontics | 50% up to lifetime maximum $1250 | 50% up to lifetime maximum * $1250 |
| Lifetime Maximum | | |

\* Schedule of Maximum Allowance: PPO providers have agreed to accept the Schedule of Maximum Allowances as payment in full for covered services. Out-of-network providers do not accept the Schedule of Maximum Allowances in full. Members are liable for any difference between out-of-network dentist's charges and dental provider benefit payment, in addition to the deductible and co-insurance.

CHICAGO/#2245623.2

Appendix C-11

## SIDE LETTER

The parties agree that the changes that were made to the Recognition Language of any Doctors Council SEIU Collective Bargaining Agreements in the recently concluded negotiations were only to clarify which unit employees shall be within and not to exclude any bargaining unit employee or position from any of the bargaining units.

26

## SIDE LETTER

For the period from the date of the execution of this tentative agreement through November 30, 2012 only, if the County enters into an agreement with any other union for a non-interest arbitration eligible bargaining unit that contains across-the-board wage increases greater than those set forth in paragraph 2 above, or agrees to a lower rate of employee contribution to health insurance (either in employee contribution to premiums or through plan design changes that are more favorable to employees) for a non-interest arbitration eligible bargaining unit, then upon demand by the union, those wage increases or health insurance changes will be applied to the members of this bargaining unit.

27

Effective January 1, 2011

DRAFT

# SCHEDULE VI
# BUREAU OF HUMAN RESOURCES

## MEDICAL PRACTITIONER COMPENSATION PLAN
### SEIU LOCAL 20

| GRADE | | 1ST STEP | 2ND STEP | 3RD STEP | 4TH STEP | 5TH STEP |
|---|---|---|---|---|---|---|
| K0 | Hourly | 31.565 | 33.102 | 34.636 | 36.327 | 38.030 |
| | Bi-Weekly | 2,525.20 | 2,648.16 | 2,770.88 | 2,906.16 | 3,042.40 |
| | Annual | 65,655 | 68,852 | 72,042 | 75,560 | 79,102 |
| K1 | Hourly | 37.029 | 38.850 | 40.685 | 42.653 | 44.629 |
| | Bi-Weekly | 2,962.32 | 3,108.00 | 3,254.80 | 3,412.24 | 3,570.32 |
| | Annual | 77,020 | 80,808 | 84,624 | 88,718 | 92,828 |
| K2 | Hourly | 43.939 | 46.124 | 48.228 | 50.577 | 52.955 |
| | Bi-Weekly | 3,515.12 | 3,689.92 | 3,858.24 | 4,046.16 | 4,236.40 |
| | Annual | 91,393 | 95,937 | 100,314 | 105,200 | 110,146 |
| K3 | Hourly | 54.640 | 57.323 | 59.953 | 62.829 | 65.761 |
| | Bi-Weekly | 4,371.20 | 4,585.84 | 4,796.24 | 5,026.32 | 5,260.88 |
| | Annual | 113,651 | 119,231 | 124,702 | 130,684 | 136,782 |
| K4 | Hourly | 60.550 | 63.482 | 66.400 | 69.635 | 72.842 |
| | Bi-Weekly | 4,844.00 | 5,078.56 | 5,312.00 | 5,570.80 | 5,827.36 |
| | Annual | 125,944 | 132,042 | 138,112 | 144,840 | 151,511 |
| K5 | Hourly | 66.400 | 69.635 | 72.842 | 76.381 | 79.933 |
| | Bi-Weekly | 5,312.00 | 5,570.80 | 5,827.36 | 6,110.48 | 6,394.64 |
| | Annual | 138,112 | 144,840 | 151,511 | 158,872 | 166,260 |
| K6 | Hourly | 72.265 | 75.789 | 79.310 | 83.163 | 87.050 |
| | Bi-Weekly | 5,781.20 | 6,063.12 | 6,344.80 | 6,653.04 | 6,964.00 |
| | Annual | 150,311 | 157,641 | 164,964 | 172,979 | 181,064 |
| K7 | Hourly | 78.131 | 81.953 | 85.734 | 89.926 | 94.128 |
| | Bi-Weekly | 6,250.48 | 6,556.24 | 6,858.72 | 7,194.08 | 7,530.24 |
| | Annual | 162,512 | 170,462 | 178,326 | 187,046 | 195,786 |
| K8 | Hourly | 83.987 | 88.087 | 92.220 | 96.723 | 101.216 |
| | Bi-Weekly | 6,718.96 | 7,046.96 | 7,377.60 | 7,737.84 | 8,097.28 |
| | Annual | 174,692 | 183,220 | 191,817 | 201,183 | 210,529 |

Effective January 1, 2011

DRAFT

## SCHEDULE VI
## BUREAU OF HUMAN RESOURCES

### MEDICAL PRACTITIONER COMPENSATION PLAN
### SEIU LOCAL 20

| GRADE | | 1ST STEP | 2ND STEP | 3RD STEP | 4TH STEP | 5TH STEP |
|---|---|---|---|---|---|---|
| K9 | Hourly | 89.849 | 94.243 | 98.640 | 103.472 | 108.324 |
| | Bi-Weekly | 7,187.92 | 7,539.44 | 7,891.20 | 8,277.76 | 8,665.92 |
| | Annual | 186,885 | 196,025 | 205,171 | 215,221 | 225,313 |
| K10 | Hourly | 95.730 | 100.399 | 105.079 | 110.247 | 115.428 |
| | Bi-Weekly | 7,658.40 | 8,031.92 | 8,406.32 | 8,819.76 | 9,234.24 |
| | Annual | 199,118 | 208,829 | 218,564 | 229,313 | 240,090 |
| K11 | Hourly | 104.505 | 109.645 | 114.750 | 120.414 | 126.061 |
| | Bi-Weekly | 8,360.40 | 8,771.60 | 9,180.00 | 9,633.12 | 10,084.88 |
| | Annual | 217,370 | 228,061 | 238,680 | 250,461 | 262,206 |

Effective June 1, 2012

DRAFT

## SCHEDULE VI
## BUREAU OF HUMAN RESOURCES

## MEDICAL PRACTITIONER COMPENSATION PLAN
### SEIU LOCAL 20

| GRADE | | 1ST STEP | 2ND STEP | 3RD STEP | 4TH STEP | 5TH STEP |
|---|---|---|---|---|---|---|
| K0 | Hourly | 32.749 | 34.343 | 35.935 | 37.689 | 39.456 |
| | Bi-Weekly | 2,619.92 | 2,747.44 | 2,874.80 | 3,015.12 | 3,156.48 |
| | Annual | 68,117 | 71,433 | 74,744 | 78,393 | 82,068 |
| K1 | Hourly | 38.418 | 40.307 | 42.211 | 44.252 | 46.303 |
| | Bi-Weekly | 3,073.44 | 3,224.56 | 3,376.88 | 3,540.16 | 3,704.24 |
| | Annual | 79,909 | 83,838 | 87,798 | 92,044 | 96,310 |
| K2 | Hourly | 45.587 | 47.854 | 50.037 | 52.474 | 54.941 |
| | Bi-Weekly | 3,646.96 | 3,828.32 | 4,002.96 | 4,197.92 | 4,395.28 |
| | Annual | 94,820 | 99,536 | 104,076 | 109,145 | 114,277 |
| K3 | Hourly | 56.689 | 59.473 | 62.201 | 65.185 | 68.227 |
| | Bi-Weekly | 4,535.12 | 4,757.84 | 4,976.08 | 5,214.80 | 5,458.16 |
| | Annual | 117,913 | 123,703 | 129,378 | 135,584 | 141,912 |
| K4 | Hourly | 62.821 | 65.863 | 68.890 | 72.246 | 75.574 |
| | Bi-Weekly | 5,025.68 | 5,269.04 | 5,511.20 | 5,779.68 | 6,045.92 |
| | Annual | 130,667 | 136,995 | 143,291 | 150,271 | 157,193 |
| K5 | Hourly | 68.890 | 72.246 | 75.574 | 79.245 | 82.930 |
| | Bi-Weekly | 5,511.20 | 5,779.68 | 6,045.92 | 6,339.60 | 6,634.40 |
| | Annual | 143,291 | 150,271 | 157,193 | 164,829 | 172,494 |
| K6 | Hourly | 74.975 | 78.631 | 82.284 | 86.282 | 90.314 |
| | Bi-Weekly | 5,998.00 | 6,290.48 | 6,582.72 | 6,902.56 | 7,225.12 |
| | Annual | 155,948 | 163,552 | 171,150 | 179,466 | 187,853 |
| K7 | Hourly | 81.061 | 85.026 | 88.949 | 93.298 | 97.658 |
| | Bi-Weekly | 6,484.88 | 6,802.08 | 7,115.92 | 7,463.84 | 7,812.64 |
| | Annual | 168,606 | 176,854 | 185,013 | 194,059 | 203,128 |

1

Effective June 1, 2012

DRAFT

# SCHEDULE VI
# BUREAU OF HUMAN RESOURCES

## MEDICAL PRACTITIONER COMPENSATION PLAN
### SEIU LOCAL 20

| GRADE | | 1ST STEP | 2ND STEP | 3RD STEP | 4TH STEP | 5TH STEP |
|---|---|---|---|---|---|---|
| K8 | Hourly | 87.137 | 91.390 | 95.678 | 100.350 | 105.012 |
| | Bi-Weekly | 6,970.96 | 7,311.20 | 7,654.24 | 8,028.00 | 8,400.96 |
| | Annual | 181,244 | 190,091 | 199,010 | 208,728 | 218,424 |
| K9 | Hourly | 93.218 | 97.777 | 102.339 | 107.352 | 112.386 |
| | Bi-Weekly | 7,457.44 | 7,822.16 | 8,187.12 | 8,588.16 | 8,990.88 |
| | Annual | 193,893 | 203,376 | 212,865 | 223,292 | 233,762 |
| K10 | Hourly | 99.320 | 104.164 | 109.019 | 114.381 | 119.757 |
| | Bi-Weekly | 7,945.60 | 8,333.12 | 8,721.52 | 9,150.48 | 9,580.56 |
| | Annual | 206,585 | 216,661 | 226,759 | 237,912 | 249,094 |
| K11 | Hourly | 108.424 | 113.757 | 119.053 | 124.930 | 130.788 |
| | Bi-Weekly | 8,673.92 | 9,100.56 | 9,524.24 | 9,994.40 | 10,463.04 |
| | Annual | 225,521 | 236,614 | 247,630 | 259,854 | 272,039 |

Effective January 1, 2011

DRAFT

## SCHEDULE XXXII

## BUREAU OF HUMAN RESOURCES

### PSYCHOLOGIST UNION
### STROGER HOSPITAL

|  | 1ST<br>STEP | 2ND<br>STEP | 3RD<br>STEP | 4TH<br>STEP |
|---|---|---|---|---|
| **PSY** | | | | |
| Hourly | 44.727 | 47.486 | 48.928 | 49.914 |
| Bi-Weekly | 3,578.16 | 3,798.88 | 3,914.24 | 3,993.12 |
| Annual | 93,032 | 98,771 | 101,770 | 103,821 |

Effective June 1, 2012

**DRAFT**

## SCHEDULE XXXII

### BUREAU OF HUMAN RESOURCES

### PSYCHOLOGIST UNION
### STROGER HOSPITAL

|  | 1ST STEP | 2ND STEP | 3RD STEP | 4TH STEP |
|---|---|---|---|---|
| **PSY** | | | | |
| Hourly | 46.404 | 49.267 | 50.763 | 51.786 |
| Bi-Weekly | 3,712.32 | 3,941.36 | 4,061.04 | 4,142.88 |
| Annual | 96,520 | 102,475 | 105,587 | 107,715 |



## COOK COUNTY HEALTH & HOSPITALS SYSTEM

Toni Preckwinkle • President
Cook County Board of Commissioners

Ram Raju MD, MBA, FACS, FACHE
Chief Executive Officer
Cook County Health & Hospitals System

Health & Hospitals System Board Members
David Carvalho • Chairman
Jorge Ramirez • Vice Chairman
Commissioner Jerry Butler
Lewis M. Collens
Ada Mary Gugenheim
M. Hill Hammock
Wayne M. Lerner, DPH, FACHE
Rev. Calvin S. Morris, PhD
Luis Muñoz, MD, MPH
Carmen Velasquez
Dorene P. Wiese, EdD

December 4, 2013

Mohammed Vaseemuddin
7505 W. 175th Street Unit #112
Tinley Park, IL 60477

CERTIFIED MAIL: 7010 2780 0002 3558 2141
US MAIL

Dear Dr. Vaseemudin,

The purpose of this letter is to inform you that as of today, December 4, 2013 you have been terminated from your position as an Attending Physician at Oak Forest Health Center. This determination was made as a result of pre-disciplinary hearing that was conducted on November 12, 2013.

As a result of the pre-disciplinary meeting held on November 12, 2013, the charge against you was upheld with merit. It was determined that you violated CCHHS 8.03(c)(32) and (b)-Job abandonment in violation of the Attendance Policy. This determination was made considering all of the information presented at the hearing. This charge merits termination.

In addition, we request the immediate return of all CCHHS property which includes pager, keys, ID as well as any and all documents, password or other materials that are in your possession.

Sincerely,

Claudia M Fegan

Claudia Fegan, M.D.
Executive Medical Director
Cook County Health and Hospitals System

cc: Chukwuemeka Ezike, M.D.
    Gladys Lopez
    Dana Quartana, SEIU
    Kevin Frey
    Monica Horton
    Personnel File

• Ambulatory & Community Health Network • Cermak Health Services • Cook County Department of Public Health •
• John H. Stroger, Jr. Hospital • Oak Forest Health Center • Provident Hospital • Ruth M. Rothstein CORE Center •

We Bring HealthCARE to Your Community

EXHIBIT
D